# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**SYLVIA ISON,**

             **Plaintiff,**

     **v.**

**COMMISSIONER OF
SOCIAL SECURITY,**

             **Defendant.**

         **Case No. 2:16-cv-00464**
         **JUDGE ALGENON L. MARBLEY**
         **Magistrate Judge Jolson**

## REPORT AND RECOMMENDATION

Plaintiff Sylvia Ison filed this action under 42 U.S.C. §§ 405(g) seeking review of a final decision of the Commissioner of Social Security (the "Commissioner"), denying her application for disability insurance benefits. For the reasons that follow, it is **RECOMMENDED** that Plaintiff's statement of errors be **OVERRULED**, and that judgment be entered in favor of Defendant.

## I.      BACKGROUND

Plaintiff filed her application for benefits on November 20, 2012, and her application for supplemental security income on November 22, 2012, alleging that he has been disabled since October 10, 2008. (Doc. 10, Tr. 61–84, 198–210). On May 15, 2015, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*, Tr. 12). On April 8, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (*Id.*, Tr. 1).

Plaintiff filed this case on May 27, 2016, and the Commissioner filed the administrative record on August 5, 2016.  (Doc. 10).  Plaintiff filed a Statement of Specific Errors on September 13, 2016 (Doc. 13), and the Commissioner responded on October 25, 2016 (Doc. 12).

**A.  Plaintiff's Background**

Plaintiff was born on March 2, 1983, and was 31 years old on the date of the hearing. (Doc. 10, Tr. 39).  Plaintiff has a high school education and has past relevant work as a cashier, assistant retail manager, a sales clerk, and a packager.  (*Id.*, Tr. 24).

**B.  Relevant Medical Records**

*1.  Neurological Records*

According to the medical records in this case, Plaintiff has a number of neurological ailments and symptoms, including, *inter alia*, Chiari I malformation, chronic headaches, dizziness, and vertigo.  The onset date of these various issues is somewhat unclear, but it appears that Plaintiff's chronic headaches began around 2008 (*see, e.g.*, *id.*, Tr. 279), while her dizziness and vertigo began in 2012 (*see, e.g.*, *id.* Tr. 280).  Plaintiff has undergone a number of neurological tests.  An MRI of Plaintiff's brain performed on July 9, 2012, was "[n]ormal except for a 5-6 mm with low lying cerebellar tonsil without nodular modeling."  (Doc. 10, Tr. 256).  A brain with a 2D cine phased contrast CSF flow study performed on October 29, 2012, was likewise normal as was an MRI on that same date.  (*Id.*, Tr. 283).  MRIs of the claimant's cervical spine and thoracic spine revealed no evidence of cord signal abnormality.  (*Id.*, Tr. 514).  A neurovestibular test performed on October 13, 2012, was abnormal because of rightward beating nystagmus during upward gaze without fixation rightward tilt of subjective visual vertical at baseline with no response to eccentric vertical axis rotational testing of the right ear.  These findings suggest incomplete compensation from a right utricular otolith loss,

which might be causing Plaintiff's episodes of dizziness. (*Id.*, Tr. 287–88). A brain MRI performed on September 30, 2014, revealed that Plaintiff's low lining cerebellar tonsils and borderline Chiari I malformation was "unchanged in appearance." (*Id.*, Tr. 545).

Despite these (and other) tests, Plaintiff's medical providers are not completely sure as to the cause of her symptoms. On October 16, 2012, records from the James Skull Base Surgery Clinic reported a diagnosis of Chiari malformation and extrinsic symptomology. (*See, e.g., id.,* Tr. 292). On January 15, 2013, however, medical professionals at the Ohio State University indicated that Plaintiff was asymptomatic and that her reported dizziness was most likely due to migraines. (*Id.*, Tr. 279). Other records suggest the claimant's low Body Mass Index ("BMI") and other abdominal problems may be contributing to her headaches. (*See, e.g.*, *id.*, Tr. 348; *see also id.*, Tr. 361 (encouraging Plaintiff to "cut down on headache medicine")).

As for treatment, Plaintiff has received injections but discontinued use after she lost her sense of taste for a week. (*Id.*, Tr. 279). More recently, she has received Botox injections. (*Id.*, Tr. 352). Plaintiff also had nerve blocks with some success at least as to neck pain. (*See, e.g.*, *id.*, Tr. 352 ("[l]ast block was very effective in reduction of neck pain for 7 days")). Plaintiff additionally treats her migraines with medication. (*See id.*, Tr. 279 (noting "medication-overuse headache")). At the time of the hearing, Plaintiff had not undergone surgery, however on April 20, 2015, Plaintiff's counsel submitted a letter indicating that the claimant will have surgery in the "near future." (*Id.*, Tr. 239).

### 2. *Otological Records*

To further investigate the cause of Plaintiff's vertigo and dizziness, her medical providers referred her for an otologic exam. The results of the exam were normal. (*Id.*, Tr. 282–83).

### 3.  Records Related to Plaintiff's Weight

It is undisputed that Plaintiff is very thin (*see, e.g.*, *id.*, Tr. 411 ), and has a low BMI (*see, e.g.*, *id.*, Tr. 279 ).  For example, on January 15, 2013, she weighed 97 pounds and had a BMI of 16.64.  (*Id.*).  However, tests for malabsorption have been negative, and recent records show an ability to gain weight (*see, e.g.*, *id.*, Tr. 368–69; *see also id.*, Tr. 363).  In addition, some doctors have attributed Plaintiff's weight to undernourishment.  (*See, e.g.*, *id.*, Tr. 405).

### C.  Relevant Hearing Testimony

Plaintiff testified that she has suffered from headaches since childhood, with a worsening of symptoms in 2008.  (*Id.*, Tr. 44).  Her headaches make her nauseous, and she also experiences numbness, leg and back pain, and loss of appetite.  (*Id.*, Tr. 52).  She testified that she suffers from daily headaches in the back of her head, with symptoms in the front of her head that come and go throughout the day.  On a scale of one to ten, she rated her pain severity at a seven.  (*Id.*, Tr. 45).  She testified that her headaches require her to lie down 2-3 times a day for 1-2 hours. (*Id.*, Tr. 51, 53).  She described her vertigo as causing imbalance, problems with gait, blurry vision, dizziness, and lightheadedness.  (*Id.*, Tr. 37, 40, 43, 46, 49–50,).  Claimant also had trouble gaining weight and had experienced extreme weight loss; as of the hearing date, she weighed only approximately 98 pounds.  (*Id.*, Tr. 52–53, 282, 339, 343, 403).

A vocational expert ("VE") also testified.  (*Id.*, Tr. 55–59).  The ALJ asked if a hypothetical individual with Plaintiff's:

> age, education, and work experience.  This individual could life ant carry 20 pounds occasionally, 10 pounds frequently, stand and walk six hours out of an eight-hour work day, sit six hours out of an eight-hour work day, unlimited pushing and pulling except as defined by the ability to lift and carry.  This individual could occasionally climb ramps and stairs and crawl.  This individual could never climb ladders, ropes, and scaffolds.  This individual should avoid all exposure to hazards such as unprotected machines and unprotected heights.

4

Could that individual do [Plaintiff's] past work?

(*Id.*, Tr. 56).  The VE answered affirmatively.  (*Id.*)  The ALJ changed the hypothetical question by adding a restriction of being off-task ten percent of the time due to headaches and dizziness. (*Id.*, Tr. 57).  The VE answered that such an individual would not be able to maintain employment.  (*Id.*, Tr. 57–58).  Plaintiff's counsel then asked the VE if employment would be maintained if this hypothetical individual missed two days of work per month.  (*Id.*, Tr. 58).  The VE stated that only one day of absenteeism per month would be tolerated.  (*Id.*).

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).  The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  To that end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision.  *Rhodes v. Comm'r of Soc. Sec.*, No. 1:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III.  DISCUSSION

Plaintiff has assigned three errors.  (*See generally* Doc. 12).

### A.  Step-Three Analysis

Plaintiff challenges the ALJ's analysis at step three.  The third step of the disability evaluation process asks the ALJ to compare the claimant's impairments with an enumerated list

of medical conditions found in the Listing of Impairments within 20 C.F.R. Part 404, Subpart P,

Appendix 1.  *See* 20 C.F.R. § 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x

488, 491 (6th Cir. 2010).  The Listing of Impairments recites a number of ailments which the

Social Security Administration has deemed "severe enough to prevent an individual from doing

any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R.

§ 416.925(a).  Each listing describes "the objective medical and other findings needed to satisfy

the criteria of that listing."  20 C.F.R. § 416.925(c)(3).  A claimant has the burden at step three of

showing that her impairment meets or medically equals a listing.  *See Walters v. Comm'r of Soc.

Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Here, Plaintiff argues that the ALJ erred with respect to

three different listings.

### 1.  *Listings 11.03*

At the hearing before the ALJ, Plaintiff's counsel argued that Plaintiff's headaches

satisfied Listing 11.02.  Now, before this Court, Plaintiff argues that her headaches meet or equal

Listing 11.03.  (Doc. 11 at 5).  While Listing 11.03 recently was amended (*see* Doc. 12 at 3 n.2),

at all times relevant to Plaintiff's claims, the Listing stated:

> Epilepsy – *nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.* With alteration of awareness or loss of consciousness and transient postical manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.03.

Plaintiff argues that, although she does not suffer from seizures, her migraines "result in

many of the same associated phenomena of epileptic seizures."  (Doc. 11 at 5).  Assuming

*arguendo* that Plaintiff has a seizure disorder that satisfies the Listing, she still must show that

she suffered from the symptoms contemplated by Listing 11.03.  In particular, she must have

"alteration of awareness or loss of consciousness" or "unconventional behavior or significant interference with activities during the day."

The ALJ considered Plaintiff's headaches in the context of Listing 11.00 with a particular emphasis on 11.02 because Plaintiff's counsel argued at the hearing that Plaintiff's chiari malformation and headaches satisfied that Listing. (*See id.*, Tr. 38). On this point, the ALJ concluded:

> The claimant's impairments, while severe, do not meet or equal a listing. In reaching this conclusion, the undersigned considered the claimant's chiari malformation and headaches under the 11.00 listings, but the claimant's condition does not seem to meet or equal any listing. The undersigned noted that the claimant's doctors considered syringomyelia. However, an MRI of the claimant's cervical spine revealed no evidence of cord signal abnormality to suggest a syrinx (Exhibit 16F/5). The claimant's representative argued the claimant's headaches equal listing 11.02, but his opinion is not supported by one of the claimant's treating sources or another medical expert. The undersigned considered the claimant's headaches, but do not find that they equal a listing for seizures that requires nocturnal episodes with residual symptoms that interfere significantly with activity during the day or daytime episodes in which the claimant loses consciousness.

(*Id.*, Tr. 18).

The ALJ's analysis was sufficient and finds support in the record. Specifically, the ALJ noted the lack of medical records supporting Plaintiff's assertion, and the ALJ properly relied upon the state agency reviewers' opinions. (*Id.*, Tr. 23). Further, the ALJ found Plaintiff's description of her own limitations "not entirely credible." (*Id.*, Tr. 20). That was within the ALJ's discretion. *See infra.* Finally, no medical professional opined that Plaintiff satisfies Listing 11.03. Considering all of this, substantial evidence supports the ALJ's decision. *See White v. Comm'r of Soc. Sec.*, No. 2:13-cv-934, 2015 U.S. Dist. LEXIS 32012, at *46 (S.D. Ohio Mar. 16, 2015) (affirming Commissioner's denial of benefits where no "medical expert opined that [claimant] met or medically equaled in severity Listing 11.03").

7

Plaintiff additionally argues that the ALJ or Appeals Council should have sought more information pursuant to SSR 96-6p in order to have further analysis by a medical expert to determine whether Plaintiff's headaches medically equal Listing 11.03.  (Doc. 11 at 6).  Under SSR 96-6p, an updated medical opinion is required:

> When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

1996 SSR LEXIS 3, at *9–10.  Plaintiff does not inform the Court that additional evidence was received, so the Court assumes that Plaintiff contends that the ALJ should have *sua sponte* requested an additional medical opinion.  "[An] ALJ has discretion to determine whether additional evidence is necessary."  *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010); *see also Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 n.3 (6th Cir. 2009) ("[A]n ALJ is required to [supplement the record] only when the information received is inadequate to reach a determination on claimant's disability status . . . .").  Here, considering the record as a whole, the undersigned concludes that the ALJ did not abuse his discretion.

### 2. *Listing 2.07*

Plaintiff next argues that the ALJ erred when he found that Plaintiff's vertigo or balance problems did not meet or equal Listing 2.07.  Listing 2.07 is a disturbance of labyrinthine-vestibular function "characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing. With *both* A and B: A. Disturbed function of vestibular

labyrinth demonstrated by caloric or other vestibular tests; and B. Hearing loss established by audiometry." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 2.07. (emphasis added).

In his opinion, the ALJ noted Plaintiff had some abnormalities in her neurovestibular testing report; however, there is "no record that the claimant has hearing loss established by audiometry," which is a requirement under listing 2.07. (*Id.*, Tr. 18). Plaintiff does not offer any evidence to dispute the ALJ's determination. Consequently, the undersigned concludes that the ALJ reasonably applied Listing 2.07 and properly concluded that Plaintiff did not meet or medically equal the Listing.

As to this Listing, Plaintiff again claims that the ALJ or Appeals Council should have obtained an updated medical opinion. The undersigned disagrees and concludes that the ALJ did not abuse his discretion on this point. *See Ferguson*, 628 F.3d at 275; *see also Poe*, 342 F. App'x at 156 n.3 ("[A]n ALJ is required to [supplement the record] only when the information received is inadequate to reach a determination on claimant's disability status . . . .").

### 3. Listing 5.08

Plaintiff also challenges the ALJ's consideration of Listing 5.08. Listing 5.08 states, "**[w]eight loss due to any digestive disorder** despite continuing treatment as prescribed, with BMI of less than 17.5 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 5.08 (emphasis in original). As the ALJ explained, while Plaintiff was "very light," "the record does not indicate that this is necessarily due to an abdominal condition." (*Id.*, Tr. 19). Plaintiff claims that the ALJ improperly based his entire decision on the fact that there was a suggestion that Plaintiff's poor nutrition was the cause of her low weight. However, the ALJ's analysis was more thoughtful. The ALJ considered the evidence in the record showing that Plaintiff did not suffer from

9

malabsorption and noted that only a few treatment notes demonstrated concern about Plaintiff's low weight. (*Id.*, Tr. 18–19). He also cited the records showing that Plaintiff's providers were not overly concerned about Plaintiff's weight. (*Id.*, Tr. 22). Finally, the ALJ gave "great weight" to the opinions of the state agency reviewing physicians who considered Listing 5.08 and found the Listing was not met or equaled. (*Id.*, Tr. 23 (relying on *id.*, Tr. 67, 79, 91, 103)). Substantial evidence thus supports the ALJ's conclusion.

### B.  RFC Determination

Plaintiff next argues that the ALJ did not account fully for the limiting effects of her headaches. (*See* Doc. 11 at 8). The undersigned disagrees.

The ALJ considered Plaintiff's impairment of chronic headaches, determined it was a severe impairment, and analyzed the evidence relating to this impairment throughout his decision. (*See, e.g.*, *id.*, Tr. 18-24). Specifically, the ALJ considered Plaintiff's testimony that her headaches had worsened since 2008 and that she was mostly unable to work due to her headaches. (*Id.*, Tr. 20). The ALJ also considered the objective evidence in the record, including MRIs of Plaintiff's brain and spine, treatment notes from the James Skull Base Surgery Clinic and Ohio State University, and medical notes regarding Plaintiff's headache symptoms and treatments, including injections and medication. (*Id.*, Tr. 20–21).

The ALJ also properly considered the medical opinions in the record, including those from Plaintiff's treating neurologists, Dr. Prevedello and Dr. Hussein, and from the state agency reviewing physicians. (*Id.*, Tr. 23). Dr. Prevedello ordered MRIs of Plaintiff's brain and spine as well as a CSF study. Despite revealing a chiari malformation, these tests revealed otherwise mostly unremarkable findings. (*Id.*, Tr. 23, (relying on *id.*, Tr. 542–43)). Dr. Prevedello's physical exams likewise revealed mostly normal findings, and he noted that Plaintiff did not

have depression or memory loss.  (*Id.*, Tr. 23 (relying on 545-46)).  In addition, Dr. Hussein's treatment notes show mostly normal physical findings, and although he noted that some treatments for Plaintiff's migraines had not been successful, her last injection was very effective for her neck pain.  (*Id.*, Tr. 23, (relying on *id.*, Tr. 358–60)).  There is nothing in either of these providers' treatment notes that suggested that Plaintiff would miss more than two days of work per month due to her impairments, or that her headaches created severe enough functional limitations that she was not capable of work.  Moreover, the state agency reviewing physicians, who reviewed the record in 2013, noted that Plaintiff was capable of a range of light work.  (*Id.*, Tr. 68-70, 80-82, 92-94, 104-06).  In coming to this conclusion, the reviewers considered Plaintiff's history of chronic headaches, her allegations regarding her limitations, and treatment notes from Plaintiff's neurologists.  (*Id.*, Tr. 63–67, 75–80, 86–92, 98–104). (*Id.*, Tr. 68-70, 80-82, 92-94, 104-06).  *See* 20 C.F.R. § 404.1527(e)(2)(i) (State agency consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.").

On the other side of the equation, Plaintiff has not offered evidence to show that her headache impairment, or any other impairment, would prevent her from working.  Plaintiff has the burden of proving she is disabled and for showing how her impairment affects her functioning.  *See* 20 C.F.R. § 404.1512(a); *see also Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988).

In sum, the ALJ reasonably considered the evidence in the record regarding Plaintiff's headaches and their functional impact (*id.*, Tr. 18–24), and the undersigned concludes that substantial evidence supports the ALJ's RFC determination.  *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) ("This Court must affirm the Commissioner's

11

conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record."). And, for the same reasons, Plaintiff's cursory argument regarding the hypothetical questions posed to the VE (*see* Doc. 8) is without merit.

### C.  Plaintiff's Credibility

An ALJ's credibility determination is afforded great weight and deference.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)).  However, credibility determinations must be clearly explained, *see Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987), and must enjoy substantial support in the record, *see Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  Here, the ALJ found Plaintiff "not entirely credible" regarding "the intensity, persistence and limiting effects of [her] [impairment-related] symptoms."  (Doc. 10, Tr. 20).  Plaintiff counters that the ALJ failed to consider the entire case, as SSR 16-3p requires, when assessing credibility.  (Doc. 11 at 9).  The undersigned disagrees for three primary reasons.

First, the ALJ considered that, despite Plaintiff's complaints of numbness, her sensation was intact at various medical appointments and, although Plaintiff testified that she had memory problems, her neurologist noted that Plaintiff did not have this symptom.  (Doc. 10, Tr. 21, 23 (relying on *id.*, Tr. 295, 331, 402, 409, 433, 439, 448, 452, 456, 461, 516, 522, 545, 550)).  "One strong indication of the credibility of an individual's statements is [her] consistency, both internally and with other information in the case record."  *See* SSR 96-7p;  *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's

testimony, and other evidence.").  The ALJ did not err in finding Plaintiff's testimony partially inconsistent with the medial records.

Second, while medical professionals generally cannot directly observe headaches, the ALJ did not err in considering that Plaintiff was not in acute distress during her many appointments with medical providers; that her gait was normal despite her complaints of dizzy spells; and that she had normal coordination, reflexes, and fine motor functioning.  (Doc. 10, Tr. 20-23 (citing *id.*, Tr. 248, 259, 282–83, 302, 315, 359, 402–03, 408–09, 425, 463–77, 486, 516, 523, 542, 545, 550)).  Put simply, the ALJ was within his discretion in determining that these medical findings undermined Plaintiff's own description of the disabling effects of her headaches.

Third, the ALJ properly considered Plaintiff's activities of daily living.  In particular, he noted:

> In addition to the foregoing, the undersigned recognizes that an individual's symptoms may suggest a greater level of impairment severity than what is shown by the longitudinal medical record that is discussed below.  As such, the undersigned has also considered other evidence in assessing the credibility of the claimant's statements regarding their limitations and restrictions.  20 CFR 404.1529(c) and 416.929(c) provide guidance on the kinds of evidence that may be considered when additional information is needed to assess the claimant's credibility.  These may include, and are not limited to the claimant's daily activities, their pain or other symptoms, aggravating factors, their treatment regimen including medications, any measures other than treatment they use to help alleviate their symptoms, and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms (See generally SSR 96-7p).  The claimant described her activities of daily living as somewhat limited, but testified that she still manages her personal needs independently and does some chores, such as occasional cooking and doing the dishes (hearing Testimony).

(*Id.*, Tr. 22).  Consideration of Plaintiff's daily activities was proper.  *See* SSR 96-7p (instructing that an ALJ may consider statements about a claimant's daily activities while assessing

credibility); *Blacha v. Sec'y of HHS*, 927 F.3d 228, 231 (6th Cir. 1990) (holding that the ALJ may consider a claimant's household and social activities when assessing credibility).

In sum, the ALJ's analysis of Plaintiff's credibility was proper, and the undersigned defers to the ALJ's ultimate determination on this issue. *See Jones*, 336 F.3d at 476 (deferring to ALJ's credibility determination).

## IV. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's statement of errors be **OVERRULED**, and that judgment be entered in favor of Defendant.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

IT IS SO ORDERED.

Date:  March 24, 2017                                   /s/ Kimberly A. Jolson
                                                        KIMBERLY A. JOLSON
                                                        UNITED STATES MAGISTRATE JUDGE