**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SYLVIA ISON,** | : | |
| | : | |
| **Plaintiff,** | : | Case No. 2:16-cv-00464 |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **ACTING COMMISSIONER OF** | : | **Magistrate Judge Jolson** |
| **SOCIAL SECURITY,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

Plaintiff Sylvia Ison ("Ison") brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Acting Commissioner of Social Security's ("Commissioner") decision denying disability benefits and supplemental security income. This matter comes before the Court for consideration of Ison's Objection to Magistrate Judge Jolson's March 24, 2017 **Report and Recommendation** (Doc. 13), which recommends that this Court overrule Ison's Statement of Specific Errors (Doc. 11) and affirm the Defendant Commissioner's decision. Upon independent review by this Court, and for the reasons set forth below, Ison's Objections are hereby **OVERRULED**. The Court **ACCEPTS** and **AFFIRMS** the Magistrate Judge's **Report and Recommendation**.

## I. BACKGROUND

Ison filed her application for disability insurance benefits on November 20, 2012, (Doc. 10 at 65), and filed her application for supplemental security income on November 26, 2012, (*id.* at 77), alleging that she has been disabled since October 10, 2008. (*Id.* at 66, 78). After administrative denials of both applications following initial filings, (*id.* at 65-76, 77-88), and

administrative denials following requests for reconsideration, (*id*. at 89-100, 101-112), an Administrative Law Judge ("ALJ") conducted a hearing on October 14, 2014. (*Id*. at 36.) On May 15, 2015, the ALJ issued a decision finding that Ison was not disabled within the meaning of the Social Security Act ("SSA"). (*Id*. at 16-35.)

In his opinion denying benefits, the ALJ conducted the required five-step sequential analysis for a disability benefits claim. (*Id*.); *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1] As an initial matter, the ALJ determined that Ison met the insured status requirements of the SSA through December 31, 2012. (Doc. 10 at 21). At step one, the ALJ determined that Ison had not engaged in substantial gainful activity since October 10, 2008, the alleged onset date of her disability. (*Id*).

---

[1] The five sequential steps are as follows:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§§ 404.1509, 416.909], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step two, the ALJ determined that the claimant had the severe impairments of chronic headaches, chiari malformation, vertigo, fibromyalgia, ulcers, and unexplained weight loss. (*Id*. at 21-22). The ALJ also concluded that Ison's depression was a non-severe impairment. (*Id*. at 22).

At step three, the ALJ determined that although Ison did have conditions that qualified as severe impairments, such conditions did not meet or medically equal one of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.). The ALJ considered Ison's chiari malformation and headaches under the 11.00 listings and found that her conditions did not meet or equal any listing. (*Id*. at 22). The ALJ considered Ison's argument that her conditions medically equaled listing 11.02, but the ALJ determined that her assertion lacked any supporting medical evidence from a treating physician or another medical expert. (*Id*.). The ALJ found that Ison's conditions did not meet or equal listing 2.07 because the record did not substantiate a claim of hearing loss. (*Id*.). The ALJ considered Ison's ulcers and weight loss conditions, but concluded that the record did not support a finding that her conditions met or equaled any of the 5.00 digestive system listings. (*Id*. at 22-23). The ALJ determined that Ison's fibromyalgia by definition did not meet any listing, and that the condition did not equal a 14.09 listing. (*Id*.).

At step four, the ALJ determined that Ison had the residual functional capacity ("RFC") to perform light work, and that she could lift and carry, push and pull, twenty pounds occasionally and ten pounds frequently. (*Id*. at 23-27). The ALJ also determined that Ison could sit for six hours and stand and/or walk for six hours for a total of eight hours in a workday. (*Id*.). The ALJ found that Ison cannot climb ladders, ropes, and scaffolds, and that she cannot work around workplace hazards such as dangerous machinery. (*Id*.). The ALJ reviewed the evidence and determined that "the claimant's medically determinable impairments could reasonably be

expected to cause the alleged symptoms," but that she was not entirely credible after reviewing the subjective and objective medical record. (*Id*. at 24-27). The ALJ found that Ison is more than minimally limited due to neurological impairments but is not disabled, and that the medical records indicate that Ison is "neurologically normal" despite her reported symptoms of headaches and vertigo. (*Id*. at 24-25). The ALJ relied on a review of the record to find that neither Ison's abdominal problems nor her fibromyalgia are disabling. (*Id*. at 25-26). Using the vocation expert ("VE") testimony, the ALJ found that with this RFC, Ison could perform past relevant work. (*Id*. at 28).

At step five, the ALJ considered Ison's age, education, work experience, and RFC to determine that she is capable of making a successful adjustment to and perform other jobs existing in the national economy. (*Id*. at 28-29). The ALJ determined that Ison had some limitations on performing some jobs with an unskilled light occupational base, but she would be able to perform the jobs of housekeeping or cleaning, folding, or ticket selling. (*Id*. at 29).

Ison timely appealed the decision. (*Id*. at 13). On April 8, 2016, the Appeals Council adopted the ALJ's decision as the Commissioner's final decision and denied Plaintiff's Request for Review. (*Id*. at 5-9). The Council also ordered that Ison's administrative record be updated to include the brief filed by her representative in support of the request to reverse the unfavorable decision by the ALJ. (*Id*. at 8-9).

Plaintiff filed a complaint in this Court, alleging three errors in her Statement of Errors. (Doc. 11). In her first assignment of error, Ison alleged that the ALJ erred in determining that the claimant's impairments did not meet or equal the previously argued 2.07 and 5.08 listings, and raised the additional argument that her headaches equaled listing 11.03. (*Id*. at 5-6). In her second assignment of error, Ison alleged that the ALJ failed to consider the functional impact of

plaintiff's severe headaches for the RFC assessment. (*Id*. at 8-9). In her third assignment of error, she alleged that the ALJ erred by determining that the claimant was not entirely credible. (*Id*. at 9-10).

On March 24, 2017, the Magistrate Judge issued a Report and Recommendation, recommending that this Court overrule Ison's objections. (Doc. 13 at 14). Ison timely objected to the Magistrate Judge's ruling, again raising her original objections and further specifying three errors. (Doc. 14 at 2). First, Ison alleged that the ALJ failed to account for the functional impact of her headaches and argued that there was evidence within the record to support a finding that her condition precluded employment. (*Id*. at 2-3). Second, Ison argued that the ALJ incorrectly relied on the absence of objective medical evidence of migraines to support the administrative decision. (*Id*. at 3-4). Third, Ison argued that the ALJ improperly weighed the opinions of the state agency medical examiners' opinions when rendering decisions on the listings and RFC assessment. (*Id*.). The relevant facts concerning Ison's subjective and medical evidence, RFC assessment, and credibility determinations are thoroughly set forth in the Magistrate Judge's Report and Recommendation. Facts that are relevant to this Court's decision will be incorporated into the analysis below.

## II. STANDARD OF REVIEW

Upon objection to a magistrate judge's report and recommendation, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b). This Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d

647, 651 (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quotation omitted). Substantial evidence constitutes "more than a mere scintilla, but only so much as would be required to prevent judgment as a matter of law against the Commissioner if this case were being tried to a jury." *Inman v. Astrue*, 920 F. Supp. 2d 861, 863 (S.D. Ohio), citing *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

In determining whether the Commissioner's findings are supported by substantial evidence, the court must consider the record as a whole. *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984), citing *Allen v. Califano*, 613 F.2d 139, 145 (6th. Cir. 1980). The Court may review any evidence in the record to determine if the ALJ's decision is based on substantial evidence, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). When reviewing an ALJ decision for substantial evidence, the legal standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Therefore, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir.1983), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005).

### III. ANALYSIS

In her objections to the Magistrate Judge's Report and Recommendation, Ison reasserts the same arguments from her Statement of Errors and submits three additional objections. (Doc. 14 at 2). Ison requests that this Court reject the Report and Recommendation submitted by the Magistrate Judge and reverse and remand the Commissioner's decision. (*Id.* at 5).

### A. Step Three Listings Analysis

In the third step of the analysis to determine a claimant's entitlement to disability benefits, it is the claimant's burden to bring forth evidence to establish that her impairments meet or are medically equivalent to a listed impairment. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987). In order to meet a listed impairment, the claimant must show that her impairment meets all of the criteria for that listing. *Hale v. Sec'y of Health and Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987); 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). If her conditions do not meet a listing, a claimant may prove that they medically equal the criteria of a listing. 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5). An impairment or combination of impairments is considered medically equivalent to a listed impairment "if the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments." *Land v. Sec'y of Health and Human Servs.*, 814 F.2d 241, 245 (6th Cir.1986) (per curiam); 20 C.F.R. §§ 404.1526(b), 416.926(b); *see Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) ("A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of [his] unlisted impairment or combination of impairments is as severe as that of a listed impairment.") (emphasis added).

The Commissioner's decision will not be upheld where the Social Security Administration "fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007). At step three, the "ALJ need[s] to actually evaluate the evidence, compare it to [a Listing], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x 411, 416; *see Shepard v. Comm'r of Soc. Sec.*, No. 3:14-cv-25, 2015 WL 4554290, at *4 (S.D. Ohio Mar. 24, 2015) (finding that the ALJ only made conclusory statements in his step three analysis that did not facilitate meaningful review allowing the District Court to determine whether the ALJ based their decision on substantial evidence).

### i. Listing 11.02 and Sufficiency of Analysis

At the administrative hearing, Ison argued that her headaches and associated symptoms medically equaled listing 11.02. (Doc. 10 at 40-42). The ALJ concluded that the claimant did not have an "impairment or combination of impairments" that medically equaled listing 11.02,[2] and conducted the following analysis regarding her migraine condition:

> The claimant's impairments, while severe, do not meet or equal a listing. In reaching this conclusion, the undersigned considered the claimant's chiari malformation and headaches under the 11.00 listings, but the claimant's condition does not seem to meet or equal any listing. The undersigned noted that the claimant's doctors considered syringomyelia. However, an MRI of the claimant's cervical spine revealed no evidence of cord signal abnormality to suggest a syrinx (Exhibit 16F/5). The claimant's representative argued the claimant's headaches equal listing 11.02, but his opinion is not supported by one of the claimant's

---

[2] As noted in defendant's brief (Doc. 12 at 3 n. 2), Listing 11.03 was merged with Listing 11.02 with an effective date of September 29, 2016. 81 FR 43048-01, 2016 WL 3551949. Prior to those changes, Listings 11.02 and 11.03, each with distinct criteria as provided *infra*, were effective at all times during the period at issue in this case, and so this Court will evaluate according to their individuated forms. *Id.*, at 43051 n. 6.

> treating sources or another medical expert. The undersigned considered the
> claimant's headaches, but do not find that they equal a listing for seizures that
> requires nocturnal episodes with residual symptoms that interfere significantly
> with activity during the day or daytime episodes in which the claimant loses
> consciousness.

(Doc. 10 at 22.)  The ALJ specifically addressed the conditions and the listing raised by Ison at the administrative hearing and thus did not "skip an entire step of the necessary analysis." *Reynolds*, 424 Fed. App'x at 416 (finding that the ALJ failed to show their step three analysis was supported by substantial evidence where the ALJ made a conclusory statement as to a physical condition but failed to analyze or address that condition in their explanation); *see Capizzi v. Colvin*, No. 2:14-cv-1063, 2015 WL 5117698, at *4-5 (S.D. Ohio Sept. 1, 2015) (where the claimant argued for a specific listing from the outset, the ALJ failed to conduct a proper step three analysis when the ALJ did not discuss that listing). However, the ALJ only restated the requirements for listing 11.02 and supported his determination by stating that the claimant lacked medical evidence. *C.f. Forrest v. Comm'r of Soc. Sec.*, 591 Fed. App'x 359, 364 (6th Cir. 2014) (reviewing sufficiency of step three analysis where the ALJ stated that the record lacked evidence to support a finding for a listed impairment). Given that Ison pointed to evidence during her administrative hearing, (Doc. 10 at 40-41), and argued that her condition and "associated phenomena" medically equaled the listing (Doc. 11 at 5), this Court will consider the ALJ's step three analysis under the substantial evidence standard.

Although the plaintiff did not raise this specific objection, this Court has the prerogative to consider such arguments. *See Reynolds*, 424 Fed. App'x at 416, citing *Dorris v. Absher*, 179 F.3d 420, 425 (6th Cir. 1999); *see also Gwin v. Comm'r of Soc. Sec.*, 109 Fed. App'x 102, 105 (6th Cir. 2004) (reviewing a specific argument regarding the ALJ's decision despite it not being raised in objections to the Magistrate Judge's report).

The Sixth Circuit does not require remand where an ALJ "provides minimal reasoning at step three of the five-step inquiry." *Forrest*, 591 Fed. App'x at 365. Instead, this Court may review the entire administrative decision to determine whether the ALJ made sufficient factual findings to support his conclusion. *See Bledsoe v. Barnhart*, 165 Fed. App'x 408, 411 (6th Cir. 2006) (finding that the language of 20 C.F.R. § 404.1526 does not require an ALJ to articulate a lengthy review of medical equivalency, and that, because he reviewed all evidence of impairments prior to step three, the ALJ was not required to "spell out every fact" when stating that the combination of impairments was considered); *see also Wischer v. Comm'r of Soc. Sec.*, No. 1:13-cv-810, 2015 WL 518658, at *12-13 (S.D. Ohio Feb. 6, 2015) (finding no error in the step three analysis where the ALJ extensively analyzed the medical evidence and the plaintiff did not cite to any authority requiring further analysis); *Kerns v. Comm'r of Soc. Sec.*, No 2:16-cv-57, 2017 WL 1324609, at *2-3 (S.D. Ohio April 11, 2017) (finding that the ALJ supported its step three determination in their review of the medical evidence, extensive analysis conducted during the RFC assessment, and credibility determination).

At the administrative hearing, Ison stated that the record contained evidence of severe migraines and posited that "given the frequency and severity of headache problem," her conditions medically equaled Listing 11.02. (Doc. 10 at 41-42). Listing 11.02 describes epilepsy "documented by detailed description of a typical seizure pattern, including all associated phenomena" as well as "daytime episodes (loss of consciousness and convulsive seizures)" or "nocturnal episodes manifesting residuals which interfere significantly with activity during the day." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (amended Sept. 29, 2016). The listings for epilepsy also require "at least one detailed description of a typical seizure" that "includes the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal

phenomena." *Id.* The criteria for Listing 11.02 and 11.03 can be applied only if the "impairment persists despite the fact that the individual is following prescribed antiepileptic treatment." *Id.*

The ALJ extensively reviewed the evidence regarding Ison's headaches, which contained no medical opinion finding evidence of epilepsy. (Doc. 10 at 24-25, 26-27). The ALJ also found the state agency medical examiners' opinions were "consistent with the record" when concluding that Ison was capable of light exertional work with some limitations. (*Id.* at 27). The ALJ noted that Ison's treating physicians made a diagnosis for a chiari malformation, but the results of the neurological tests were "mostly unremarkable" or "mostly normal." (*Id.*). *See* (*Id.* at 352) ("[I]ncidental borderline chiari with normal flow unlikely contributing to headaches"); (*Id.* at 363) (opining that Ison's neurologic exam did not show neurological abnormalities, that Ison's chronic migraine without aura was unlikely to be caused by the chiari malformation, and prescribing nerve blocks for treatment); (*Id.* at 403) (opining that the patient exhibited a "rightward beating nystagmus during upward gaze without fixation," but that the results of the MRIs of Ison's brain as well as cervical and thoracic spine were normal); (*Id.* at 520) (noting that Ison was positive for headaches but negative for the following neurological symptoms: tingling, tremors, sensory change, speech change, focal weakness, [and] seizures"); (*Id.* at 554) (under neurological systems, noting a lack of dizziness, tremors, speech change, seizures, but describing complaints of headaches).

Even if the ALJ failed to support its step three findings, such error is harmless where a claimant fails to show that her "impairments met or medically equaled in severity any [listing]." *Forrest*, 591 Fed. App'x at 366, citing *Reynolds*, 424 Fed. App'x at 411; *see King v. Heckler*, 742 F.2d 968, 973-74 (6th Cir.1984) (determining that the lack of evidence in support of the claimant's conditions met the criteria for a listing substantially supported the Secretary's

decision that claimant did not meet the listing); *Adams v. Comm'r of Soc. Sec.*, No. 3:14-cv-286, 2016 WL 1732930, at *4 (S.D. Ohio Mar. 7, 2016) (where plaintiff pointed to evidence showing abnormalities but failed to demonstrate that the such evidence or the record met or medically equaled a listing); *see also White v Comm'r of Soc. Sec.*, No. 2:13-cv-934, 2015 WL 1197818, at *16-17 (S.D. Ohio Mar. 16, 2015) (finding that the ALJ's decision was supported by substantial evidence where no medical expert opined that claimant met the requirements for Listing 11.03, and provided no additional evidence to show her conditions equaled in severity Listing 11.03).

The record lacks any medical opinion that shows that Ison medically equaled in severity listing 11.02, or that her conditions and symptoms met its criteria. *See Id*.; *Wischer*, 2015 WL 518658, at *12 (finding that the plaintiff failed to show her conditions met all criteria for a listing where the record lacked supporting medical evidence). Ison also did not submit any additional evidence to show her headaches medically equaled in severity Listing 11.02. Without objective medical evidence to support a finding for such criteria, this Court finds any failure to by the ALJ at their step three analysis to be harmless error.

### ii. Issues Raised by Ison Regarding the ALJ's Step Three Analysis

Ison has also raised several issues with the ALJ's step three analysis. First, she asserts that the ALJ erred in not finding her conditions medically equaled listings 11.03, 2.07, and 5.08. (Doc. 11 at 4-7). Second, she states that the ALJ used his lay opinion because he relied on the opinions of the state agency medical consultants who did not consider Listings 11.03 or 2.07, and the record does not include any other medical opinion that considers whether the conditions equal Listing 11.03 or 2.07. (*Id*. at 5-6). Ison further argued that the ALJ or Appeals Council had

an obligation under SSR 96-6p[3] to obtain additional medical evidence for Listings 11.03, 2.07, and 5.08. (*Id.* at 6-8).

*iii. Ison's Objections to the Step Three Analysis*

*(a.) Listing 11.03*

In her first assignment of error, Ison raised the issue of Listing 11.03 and argued that claimant's conditions medically equaled 11.03. (Doc. 11, at 6; Doc. 14 at 5). Listing 11.03 is described as follows:

> 11.03 Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 11.03 (amended Sept. 29, 2016).

The Sixth Circuit does not require that an ALJ "address every listing" or "discuss listings that the applicant clearly does not meet." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014), quoting *Sheeks v. Comm'r of Soc. Sec.*, 544 Fed. App'x 639, 641 (6th Cir. 2013). An ALJ should analyze a relevant listing where the record "raise[s] a substantial question as to whether [the claimant] could qualify as disabled." *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990) (finding that the Appeals Council failed to properly analyze a listing where conclusive evidence showed the claimant satisfied that listing, which raised a "substantial question" as to whether the claimant qualified as disabled); *c.f. Sheeks*, 544 Fed. App'x at 642 (finding plaintiff did not raise a substantial question as to satisfying the listing for an intellectual

---

[3] Though not statutes or regulations, Social Security Rulings "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy." 20 C.F.R. § 402.35(b).

13

disability where the ALJ's decision did not preclude a finding for the listing, but the plaintiff failed to do more than point to inconclusive evidence that did not prove an essential element of the listing).

Where the ALJ decision does not discuss a listing subsequently raised in objection, the court "must determine whether the record evidence raises a substantial question as to [the claimant's] ability to satisfy each requirement of the listing." *Smith-Johnson*, 579 Fed. App'x at 433. In order to raise a substantial question, a claimant "must do more than point to evidence on which the ALJ could have based his finding." *Id.* at 432. The claimant must fulfill her burden of presenting "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001), quoting *Zebley*, 493 U.S. at 531 (emphasis in original); *see Malone v. Comm'r of Soc. Sec.*, 507 Fed. Appx. 470, 472 (6th Cir. 2012) (finding that the ALJ's decision was supported by substantial evidence where the ALJ reviewed the plaintiff's conditions relevant to the listing and the plaintiff failed to point to medical evidence that would have medically equaled the listing). This Court should not disturb the ALJ's findings "unless . . . persuaded that his findings are legally insufficient." *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir.1986); *see Reynolds*, 424 Fed. App'x. at 415-16 (remanding for failure to conduct a proper analysis at step three because the ALJ completely ignored the physical impairment and focused solely on the plaintiff's mental impairment).

Ison raised the issue of Listing 11.03 on appeal to this Court without producing additional evidence in support of that argument. In her complaint, Ison pointed to evidence in the record, but such evidence does not include any objective medical evidence that indicated her conditions medically equaled Listing 11.03. *See Smith-Johnson*, 579 Fed. App'x at 434-35 (affirming the ALJ's decision where the evaluating medical professionals' opinions did not find or conclusively

14

determine that the plaintiff met the criteria for a listing, and therefore the plaintiff failed to show that the record evidence raised a substantial question). Much of the evidence to which claimant has cited contains subjective reports by Ison with inconclusive findings related to medical equivalence for Listing 11.03. *See Stiltner v. Comm'r of Soc. Sec.*, 244 Fed. App'x 685, 689 (6th Cir. 2007) (finding that the ALJ thoroughly considered a treating source's opinion before not according it controlling weight because it was based on subjective reports from claimant whose testimony was considered only partially credible). For finding medical equivalence, an ALJ will consider whether the "symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria", but "will not substitute [claimant's] allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of [claimant's] impairment(s) to that of a listed impairment." 20 C.F.R. §§ 404.1529(d)(3), 416.929(d)(3); *see Zebley*, 493 U.S. at 532 (describing how the regulations require a higher standard for meeting a listing impairment because it creates a "presumption of disability that makes further inquiry unnecessary."). The ALJ found Ison's conditions to be severe impairments at step two, (doc. 10 at 22), and considered her testimony partially credible compared to the objective medical evidence, (*id.* at 24), but the ALJ had substantial evidence to conclude that she did not meet the criteria for Listing 11.03.

Ison also contends that the ALJ used his lay opinion when relying on the state medical consultant's findings because no medical opinion considered Listing 11.03. (Doc. 11 at 6).

In general, a medical expert's opinion "is required before a determination of medical equivalence is made." *Retka v. Comm'r of Soc. Sec.*, No. 94-2013, 1995 WL 697215, at *2 (6th Cir. 1995). The Sixth Circuit considers the signature of a state agency physician on a disability determination to be probative evidence that medical equivalence was considered. *Hicks v.*

*Comm'r of Soc. Sec.*, 105 Fed. App'x 757, 762 (6th Cir. 2004), quoting SSR 96-6p, 1996 WL 374180 (July 2, 1996) ("The signature of a State agency medical or psychological consultant . . . ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review."). The burden of compiling a complete record, "defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 214 (6th Cir.1986); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a).

Ison has not directed this Court to any opinion which equates her impairment to listing 11.03, nor has the Court's review of the record shown any such opinion exists. However, the state agency medical examiner's assessments provide substantial evidence that medical equivalence was considered but not found for Ison's conditions. (Doc. 10 at 66-112); *See Hicks*, 105 Fed. App'x at 762 (finding that the Commissioner had substantial evidence to determine medical equivalence where no medical opinion expressly considered listings 11.02 or 11.03, but the ALJ relied on the professional medical input from the state agency medical examiners); *see also Jones v. Astrue*, No. 3:08cv00224, 2009 WL 2827942, at *12-13 (S.D. Ohio Sept. 1, 2009) (finding that the ALJ properly relied on the medical opinions from the state agency medical examiners when determining medical equivalence, and that the plaintiff failed to point to or provide evidence that her conditions medically equaled the listings).

As stated previously, this Court's "inquiry is limited to a determination of whether substantial evidence exists in the record to support the Secretary's decision and to a review for any legal errors." *Landsaw*, 803 F.2d at 213 (internal citations omitted). The ALJ properly relied

on the state agency medical consultants' opinions for making his determination on whether Ison's conditions medically equaled listing 11.03.

### (b.) Listing 2.07

Ison argued that her conditions medically equaled the criteria for Listing 2.07, that the ALJ "disregarded" that listing because she did not meet every element of the Listing, and that the ALJ was obligated to obtain an updated medical opinion. (Doc. 11 at 6-7).

The ALJ properly concluded that Ison did not meet the requirements of Listing 2.07 because she did not have "hearing loss established by audiometry." 20 C.F.R. § 404, Subpt. P, App. 1 § 2.07(B). To establish hearing loss, a claimant is required to show "audiometric measurements of the severity of [their] hearing loss" through an "otologic examination and audiometric testing." *Id*.

Based on the analysis conducted under Listing 11.03 *supra*, this Court does not find the ALJ erred in their determination.

### (c.) Listing 5.08

Ison similarly argued that her conditions met or medically equaled Listing 5.08, and that the ALJ made that determination "based on a suggestion that the plaintiff's poor nutrition was the cause of her low weight." (Doc. 11 at 7).

As the Magistrate Judge noted in her opinion, the ALJ's analysis "was more thoughtful" than merely relying on a suggestion by claimant's treating physician. (Doc. 13 at 9). The ALJ noted that the claimant's "colonoscopy and upper endoscopy were unremarkable," and, though he considered Ison's low BMI, the record showed that the claimant's medical providers did not express concern for her weight. (Doc. 10 at 22-23, 26). The ALJ also properly relied on the state

agency medical examiners opinions which expressly considered Listing 5.08. (*Id*. at 27, relying

on *Id*. at 71, 83, 95, 107).

Based on the analysis conducted under Listing 11.03 *supra*, this Court does not find the

ALJ erred in its determination.

### B. The ALJ Had No Obligation to Obtain Updated Medical Opinions Under SSR 96-6p

Ison also contends that the ALJ erred in failing to obtain further information from

medical experts to determine whether her conditions met or medically equaled the listings. (Doc.

11 at 6-7). Ison argues that SSR 96-6p obligated the ALJ to seek further medical expertise to

update the record and assist in finding medical equivalence. (*Id*.).

The Magistrate Judge has correctly stated the circumstances under which an ALJ must

call on a medical expert to give an updated medical opinion. SSR 96-6p requires the ALJ to

obtain an updated medical opinion:

> When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6p, 1996 WL 374180, at *4.  Thus, the ALJ has discretion when determining whether

further evidence is required. *See Landsaw*, 803 F.2d at 214, citing 20 C.F.R. § 416.917(a)

("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but

simply grant him the authority to do so if the existing medical sources do not contain sufficient

evidence to make a determination."); *Courter v. Comm'r of Soc. Sec.*, No. 10-6119, 2012 WL

1592750, at *9 (6th Cir. May 7, 2012) (stating that claimant must first demonstrate that the

record suggests the conditions medically equal a listing or that the record may change the state agency medical experts' findings); *see also Kelly v. Comm'r of Soc. Sec.*, No. 07-5897, 2009 WL 233266, at *5 (6th Cir. Feb. 2, 2009) (agreeing with the Magistrate Judge's opinion that unless the new evidence clearly renders prior medical opinions "untenable," a gap between the state agency assessment and the administrative hearing does not warrant remand); *Mills v. Comm'r of Soc. Sec.*, No. 1:11-cv-321, 2012 WL 1715042, at *10 (S.D. Ohio May 15, 2012) (finding that ALJ was not required to obtain an updated opinion when the state agency medical consultants did not review a subsequent medical opinion from a treating source because the newer opinion did not include evidence that would indicate that the plaintiff's conditions worsened); 20 C.F.R. §§ 404.1512(a), 416.912(a).

Ison's contention that the ALJ erred in failing to develop the record is unavailing. The ALJ properly reviewed the record, which included considering the medical opinions by Ison's treating physicians conducted after the state agency medical consultants' examinations, and concluded that there was substantial evidence to render a decision. (Doc. 11 at 22-23, 27); *see Landsaw*, 803 F.2d at 214, citing 20 C.F.R. § 416.1444 (finding that a "fully inquiry" did not require further evidence where the record was sufficient to support a conclusion of no disability). The ALJ was not required to obtain further medical records where state agency medical examiners did not review a specific listing subsequently raised at the administrative hearing or to this Court. *See Brown v. Sec'y of Health & Human Servs.*, 911 F.3d 731, No. 89-4000, 1990 WL 121472, at *5 (6th Cir. Aug. 22, 1990) ("A report is not necessarily incomplete simply because it does not provide the evidence sought by a claimant. Mere silence as to a medical condition has been insufficient for courts to find that the Secretary has abused his discretion in not ordering a consultative examination."); *Lewis v. Astrue*, No. 3:07CV145, 2008 WL 4186325, at *10 (S.D.

Ohio Sept. 2, 2008) (concluding that the ALJ had broad discretion to develop the record, and that the plaintiff had the burden of pointing to evidence that would alter the determinations of medical equivalence by the state agency medical examiners). The ALJ did not err in declining to seek further medical expertise.

### C. Credibility Determination

In her statement of errors, Ison contends that the ALJ erred in finding her testimony only partially credible because the ALJ failed to consider the entire case record. (Doc. 11 at 9). Ison again raises the issue of credibility by restating her objection to the ALJ's "[error in] relying on the lack of objective evidence of Plaintiff's migraines to assess the severity and frequency of headaches." (Doc. 14 at 4).

When making a disability determination "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003) (citations omitted); *see Buxton*, 246 F.3d at 773, quoting 42 U.S.C. § 423(d)(5)(A) ("Subjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'"). Such findings are afforded "great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997), citing *Villarreal v. Sec'y of Health and Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). An ALJ is required to support credibility assessments with substantial evidence. *See McClain v. Comm'r of Soc. Sec.*, No. 1:14-cv-159, 2014 WL 5765518, at *8-9 (S.D. Ohio No. 5, 2014), citing *Walters*, 127 F.3d at 531 (the ALJ had substantial evidence to make their credibility determination based on their review of the objective evidence, the ALJ's thoughtful comparison of that evidence to the plaintiff's testimony and daily activities,

which together undermined the allegations of disabling pain). Testimony that conflicts with the objective medical evidence may serve to undercut a claimant's credibility. *See Blacha v. Sec'y of Health and Human Servs.*, 927 F.3d 228, 230-31 (6th Cir. 1990) (deferring to the ALJ's credibility determination in part due to a lack of objective medical evidence supporting claimant's subjective complaints); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of [claimant's] symptoms and the effect those symptoms . . . may have on your ability to work.").

Ison relies on *Blevins-Bryant v. Colvin* to support her contention. (Doc. 14 at 4), citing 2015 U.S. Dist. LEXIS 96247, at *11 (S.D. Ohio July 23, 2015). However, the ALJ in that case misstated the record evidence, made few findings regarding the plaintiff's migraines, and ultimately relied on the lack of objective medical evidence to dismiss the claimant's complaints. *Id.*, at *10-11. As the Magistrate Judge notes in the case at hand, the ALJ supported his credibility determination by finding inconsistencies between Ison's testimony and the objective medical record. (Doc. 13 at 12-13, citing Doc. 10 at 25, 27). The ALJ also extensively reviewed the medical opinions of the state agency medical examiners and treating physicians which did not contain evidence that the plaintiff was in acute distress such that her headaches would be disabling. *Id.* Finally, the ALJ properly considered the plaintiff's daily activities when making his credibility determination. The ALJ had substantial evidence to conclude Ison lacked credibility based on his analysis of the record and objective medical evidence which supported that conclusion. *See Descott v. Comm'r of Soc. Sec. Admin.*, No. 1:16CV1271, 2017 WL 1050379, at *9 (S.D. Ohio Mar. 20, 2017) (finding the ALJ had substantial evidence when finding the plaintiff less than credible based on the lack of evidence to support the complaints of

debilitating pain from migraines, conflicting reports between testimony and objective medical evidence and plaintiff's daily activities, and failure to comply with her doctor's recommendations).

### D. RFC Assessment

Ison raises the objection that the Magistrate Judge erred in affirming the ALJ's RFC determination because the ALJ failed to properly account for the functional impact of Ison's headache condition. (Doc. 14 at 2-3).

An RFC is defined as "the most [a claimant] can do despite [their] limitations" based on the record evidence. 20 C.F.R. §§ 404.1545(a), 416.945(a); *see Ealy*, 594 F.3d at 513-14 (finding that the ALJ properly supported its RFC determination with substantial evidence because the ALJ reviewed the entire case record and made work limitation recommendations based on the available objective medical evidence). The Social Security Act requires an ALJ to make the ultimate determination on a claimant's RFC. 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. §§ 404.1546(c), 416.946(c). In its analysis, an ALJ "is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment" of a claimant's RFC. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). An ALJ "does not improperly assume the role of a medical expert" when reviewing and weighing the medical and non-medical evidence prior to issuing a decision. *Poe v. Comm'r of Soc. Sec.*, No. 08-5912, 2009 WL 2514058, at *7 (6th Cir. Aug. 18, 2009).

Ison argues that the Magistrate Judge improperly affirmed the ALJ's RFC determination because "[the Judge] does not address the fact that the ALJ did not address any functional limitations due to [Ison's] headaches, despite inconsistently finding it to be a severe impairment." (Doc. 14 at 3). However, the regulations provide a sequential framework for an

ALJ to determine whether a claimant is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." 42 U.S.C. § 423(d)(1)(A). Provided an ALJ adheres to the correct regulatory framework, a claimant that has a severe impairment at step two is not immediately entitled to a finding of a disability. *See Byrd v. Comm'r of Soc. Sec.,* No. 1:12-cv-455-HJW, 2013 WL 5389219, at * (S.D. Ohio Sept. 25, 2013) (stating that the plaintiff "[misunderstood] that the threshold finding of a 'severe' impairment at step two of the analysis does not by itself entitle her to federal disability benefits."); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (defining disability and giving a general overview of the sequential steps); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing the sequential evaluation process).

The Magistrate Judge properly reviewed the administrative decision and determined that the ALJ had incorporated Ison's severe impairment of chronic headaches in his RFC assessment. (Doc. 13 at 10-11). The ALJ extensively reviewed Ison's record and specifically addressed her headache condition throughout the administrative decision, which included an analysis of Ison's testimony and the record objective medical evidence consisting of Ison's history and the treatment notes of examining physicians. (*Id.* at 24-25, 27). When assessing her RFC, the ALJ also relied on the state agency medical examiners' reports, which considered Ison's headache condition. (*Id.* at 27). *See Coldiron v. Comm'r of Soc. Sec.*, No. 09-4071, 2010 WL 3199693, at *7-8 (6th Cir. Aug. 12, 2010) (finding that the ALJ did not ignore the functional impact of plaintiff's condition because the ALJ analyzed the condition throughout the decision and used RFCs from physicians who explicitly considered that condition); *Wright v. Comm'r of Soc. Sec.*, 2917 WL 3224664, at *5 (S.D. Ohio July 31, 2017) (finding substantial evidence supported the ALJ's RFC assessment because the ALJ reviewed the record and explained its consideration of

the condition, which did not contain any opinion that the plaintiff's headaches were disabling or limiting). Based on the foregoing, the ALJ did not fail to incorporate Ison's headache condition into his RFC assessment.

Ison also contends that the ALJ improperly weighed the opinions of the state agency medical examiners when making his RFC assessment. (Doc. 14 at 4). Specifically, Ison argued that the state medical examiners opinions were based on an incomplete record, and thus the ALJ erred by placing "too much weight" on the opinions. (*Id*.).

Under 20 C.F.R. §§ 404.1527(c), 416.927(c), an ALJ must "evaluate every medical opinion" and must "always give good reasons . . . for the weight we give your treating source's medical opinion." *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The regulations provide "progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 (July 2, 1996). In general, an ALJ must give more weight to opinions from treating sources, and must give such opinions controlling weight if the ALJ determines that the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ is required to give "good reasons" for a decision regarding the weight given a claimant's treating source opinion. *Id*. The good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188 (July 2, 1996).

Ison contends that *Blakely v. Commissioner of Social Security*, 581 F.3d 399, at 409 (6th Cir. 2009) stands for the proposition that an ALJ cannot give "greater weight" to a state agency

medical consultant who has not reviewed the whole record. (Doc. 14 at 4-5). *Blakely* is distinguishable, however, because there the Court, remanded for failure to adhere to Social Security regulations because the ALJ rejected or ignored the opinions of the plaintiff's treating sources without providing good reasons. *Id*. at 407-09, citing SSR 96-2p, 1996 WL 374188 (July 2, 1996) (stating that "any opinions [a treating source] made should have been given controlling weight absent justifiable reasons-made on the record- for discounting those opinions," and finding error where the ALJ ignored or rejected objective medical evidence from treating sources). The Court also determined that the ALJ's procedural errors were not *de minimis* in that the ALJ's explanation precluded meaningful review, failed to properly weigh the evidence, and the treating sources were credible based on the objective medical evidence supporting their opinions. *Id*. at 409-410.

The ALJ did not discount the opinions of Ison's treating sources, and in fact gave them controlling weight. The ALJ found Dr. Prevedello and Dr. Hussein to be treating sources and gave "substantial" and "some" weight to their opinions respectively. (Doc. 10 at 27). Noting that these opinions "[did] not exhaustively list [Ison's] vocational limitations," the ALJ still described the nature of the treating relationship and the objective medical evidence in their opinions. For example, the ALJ noted Dr. Prevedello's specialty as a neurologist, his role in treating Ison's chiari malformation, and listed the objective medical evidence which was "mostly unremarkable" or "mostly normal." (*Id*.). The ALJ adopted the opinions of the treating sources in part because they were consistent with the record and did not contradict the opinions of the state agency medical examiners. (*Id*.). The ALJ fulfilled his procedural obligations because he adopted the treating sources' findings, compared them to the record, and found them consistent with the state agency medical examiners' assessments.

Ison correctly states that this Court "require[s] some indication that the ALJ at least considered [the issue of an opinion lacking subsequently added medical evidence] before giving greater weight to an opinion that is not 'based on a review of a complete record." *Blakeley*, 581 F.3d at 409, quoting *Fisk v. Astrue*, 253 Fed. App'x 580, 585 (6th Cir. 2007). In the case at hand, the ALJ compared the state agency medical examiners' opinions to the medical record and held that the opinions were consistent with the entire medical record, which showed that Ison has "neurological problems, but does not appear to be in acute distress and her medical providers have not attempted surgery." (Doc. 10 at 27; *Id*, at 439, 467, 527, 554). The ALJ determined Ison's RFC based on "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and, rather than negating or discounting later medical evidence, incorporated treating source opinions and plaintiff's testimony into his RFC assessment. (*Id*. at 23). *See Anderson v. Colvin*, No. 2:14-cv-1222, 2015 WL 1875359, at *8-9 (S.D. Ohio Apr. 23, 2015) (finding that the ALJ appropriated relied on a state agency medical examiner's opinion that did not include later evidence because the ALJ considered all the evidence, noted that the state agency opinion was consistent with and supported by the record medical evidence, and the plaintiff failed to cite objective medical evidence that would alter the opinion's findings).

Even if the ALJ did not sufficiently address the lack of evidence in the state agency opinions, the ALJ did not commit an error requiring remand. Though an ALJ should articulate the reasons for crediting an opinion of a consultant who has not reviewed the complete record, an ALJ's opinion "may still be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or *de minimis*." *Swartz v. Comm'r of Soc. Sec.*, No. 1:10-cv-605, 2011 WL 4571877, at *8 (S.D. Ohio Aug. 18, 2011); *see Johnson v. Colvin*, No. 1:12-cv-401, 2013

WL 2319134, at *7-8 (S.D. Ohio May 28, 2013) (finding that even if the ALJ inadequately addressed the fact that the state agency medical examiners did not have a complete record when rendering their opinions, the ALJ comported with the requirements from *Blakely* by conducting a thorough review of the evidence, stating and explaining that the state agency medical opinions were consist with the overall record, and resolving any inconsistencies within the record).

The ALJ neither ignored nor discounted the objective medical evidence and opinions of treating sources, but instead conducted a lengthy review of the evidence, supported the weight given to the medical opinions, and found that nothing in the record contradicted the findings of the state agency medical examiners. (*Id.* 23-28). As stated by the Magistrate Judge, the ALJ had substantial evidence to support his RFC assessment because "[t]here is nothing in either of these providers' treatment notes that suggested that Plaintiff would miss more than two days of work per month due to her impairments, or that her headaches created severe enough functional limitations that she was not capable of work." (Doc. 13 at 11). *See McGrew v. Comm'r of Soc. Sec.*, No. 08-4561, 2009 WL 2514081, at *32 (6th Cir. Aug. 19, 2009) (concluding that the ALJ did not err in relying on the state agency medical consultant's opinion despite it not including evidence submitted after the review because the ALJ reviewed that evidence and incorporated any relevant changes to the plaintiff's condition in the RFC assessment). The ALJ also resolved any inconsistencies in the record by making his credibility determination as to Ison's testimony and subjective reports of symptoms. (Doc. 10 at 24-25). In sum, the ALJ fairly weighed the evidence as a whole and explained the weight given to credible sources, as required under *Blakely*.

## IV.  CONCLUSION

For these reasons, the Court **ACCEPTS** and **AFFIRMS** Magistrate Judge Jolson's **Report and Recommendation** (Doc. 13), thereby **OVERRULING** Ison's objections (Docs. 11, 14).  The Commissioner's denial of benefits is **AFFIRMED**.  This case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

_____/s/ Algenon L. Marbley_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  September 18, 2017**